IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELIZABETH C. DEMPSEY, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| STATE OF DELAWARE, | : | |
| DEPARTMENT OF PUBLIC SAFETY, | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

### PARTIES

1.  Plaintiff, Elizabeth C. Dempsey (hereinafter "Plaintiff"), has at all times relevant to this Complaint been a resident of Kent County and later Sussex County in the State of Delaware.

2.  Defendant, State of Delaware, Department of Public Safety also known as The Department of Safety and Homeland Security (hereinafter "Defendant"), is a state agency, and at all times relevant to this Complaint, the employer of Plaintiff Christine Dempsey. The Department of Safety and Homeland Security is subject to service through the Secretary of Public Safety David B. Mitchell, whose address is Public Safety Building, P.O. Box 818, 303 Transportation Circle, Dover, Delaware 19903-0818.

### JURISDICTION

3.  Jurisdiction is founded on the existence of a question arising under federal statutes. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 704(a) of Title

VII of the Civil Rights Act. The jurisdiction of this Court is invoked to secure protection and redress deprivation of rights secured by federal and state law which prohibits discrimination against employees because of their gender.

## FACTUAL BACKGROUND

4. Plaintiff graduated from the Delaware State Police Academy on December 16, 1999 and was certified by the Council on Police Training. Thereafter, Plaintiff participated in Field Training at Troops 5 &7 through March of 2000. In March of 2000, Plaintiff was assigned to Troop 3 in Kent County.

5. On or about October 25, 2003, Plaintiff was at her home with Kevin Keller (hereinafter "Keller") and off-duty, Master Corporal Brian Maher (hereinafter "Cpl. Maher") of Troop 7 came to Plaintiff's residence and broke into Plaintiff's apartment while threatening to harm Keller.

6. Plaintiff contacted the non-emergency line to Kent County Dispatch Center and explained to dispatch that someone was breaking into her residence. She was advised that officers were in route. When Plaintiff became aware that the assailant had fled, she again called the Dispatch Center and advised that no officers were needed.

7. Trooper Argo, Cpl. Capo and Cpl. Gygrynuk arrived at Plaintiff's residence moments later.

8. Shortly thereafter, Cpl. Maher advised Captain Hawkins (hereinafter "Capt. Hawkins") of his actions at Plaintiff's residence. Capt. Hawkins then contacted Major R.L. Hughes (hereinafter "Major Hughes") and advised him of the same. Cpl. Maher was told by Capt. Hawkins to go home and that he would call Cpl. Maher if necessary.

9. Also on or about October 26, 2003, Cpl. Gygrynuk, Cpl. Csapo and Tpr. Argo returned to Troop 3 and met with Sergeant Houdek (hereinafter "Sgt. Houdek"). Sgt.

Houdek informed Cpl. Gygrunyk, Cpl. Csapo and Tpr. Argo not to put Cpl. Maher's name in the incident report.

10. On or about October 27, 2003, Capt. Hawkins contacted Plaintiff via the telephone to discuss the October 26th incident. Capt. Hawkins advised the Plaintiff that Major Hughes was made aware of the circumstances surrounding the incident and that everything was "taken care of". Capt. Hawkins further advised Plaintiff that she did not need to discuss the incident with anyone else.

11. In or around March 28 2004, Cpl. Maher was contacted by Captain Nolt (hereinafter "Capt. Nolt") who advised Cpl. Maher that there was going to be a criminal and Internal Affairs Investigation of the October 26 incident.

12. On or about April 6, 2004, Plaintiff was called into Captain Dixon's (hereinafter "Capt. Dixon") office with Sergeant Chuck Caldwell (hereinafter "Sgt. Caldwell"). Plaintiff was informed that there would be an internal investigation and a criminal investigation into the incident that occurred at Plaintiff's residence on October 26, 2003. Plaintiff was also informed that she was considered the "victim" in the incident.

13. On or about April 23, 2004, Plaintiff interviewed at the Attorney General's office in Georgetown by Sgt. Robert Hudson who advised Plaintiff that she was the "victim".

14. On or about May 28, 2004, Cpl. Maher was arrested and suspended for the October incident. Although his conduct on the date of the incident amounted to burglary which is a felony, Cpl. Maher was charged with first degree trespassing, terroristic threatening and criminal mischief; which constitute misdemeanors under the Delaware criminal code.

15. Prior to this incident in May 2004, Capt. Nolt welcomed Plaintiff to Troop 7 and advised her that she would work on the "C Shift". However, after Cpl. Maher's arrest, Lt.

Hagan contacted Plaintiff and advised her that she was being moved to work on the "A Shift".

16. Cpl. Maher was on suspension during the change in Plaintiff's schedule from "C Shift" to "A Shift". Lt. Hagan advised Plaintiff that this shift change was made in anticipation of Cpl. Maher's return so that Plaintiff and Cpl. Maher would not work the same schedule.

17. The notification of Plaintiff's schedule change did not occur two weeks before the schedule change was to take place.

18. Although his conduct on the date of the October 2003 incident amounted to *criminal* conduct unbecoming a Trooper, in August 2004, Cpl. Maher was charged divisionally with conduct unbecoming a Trooper and failing to report a domestic incident to a superior. Cpl. Maher pled guilty to both charges and went before Col. Chaffinch. The punishment set forth by the Col. Chaffinch was that Cpl. Maher's rank was reduced to Corporal while on probation for one year. However, Cpl. Maher was still allowed to return to Troop 7 and was permitted to participate in special units despite being on probation.

19. Plaintiff was charged divisionally with violating Rule #15 which is falsifying a report to a superior officer and failing to report a domestic incident to a superior.

20. On or about December 1, 2004, the Trial Board convened concerning Plaintiff's appeal of the charges of violating Rule #15 which is falsifying a report to a superior officer and failing to report a domestic incident to a superior stemming from the October 2003 incident. The Board consisted of three white males; despite the fact that there were two minorities that could have been chosen for Plaintiff's panel. The panel members were Major Joe Papili, Capt. Albert "Skip" Homiak and Cpl. Larry Welch.

21. The Trial Board refused to allow Plaintiff to have access to the Internal Affairs interviews of all those interviewed in connection with the October 2003 incident. Additionally, Major Houghes, Sgt. Houdek and Capt. Hawkins were not called to testify during the Internal Affairs investigation.

22. The Trial Board concluded on January 13, 2005 with a finding that Plaintiff was guilty of falsifying a report and recommended that she be terminated. On January 31, 2005, Plaintiff was terminated.

23. During the Internal Affairs investigation, Cpl. Gygrynuk testified that Sgt. Houdek instructed Cpl. Gygrynuk, Cpl. Csapo and Tpr. Argo to write the incident report as having an "unknown" suspect.

24. Based on information and belief, Cpl. Gygrynuk, Tpr. Argo and Cpl. Csapo each falsified information in their investigative reports when they indicated that the suspect was "unknown" because they were aware that the suspect was Cpl. Maher. However, Cpl. Gygrynuk, Tpr. Argo and Cpl. Csapo were not disciplined for the false reports.

25. Additionally, Sgt. Houdek was the approving officer of Cpl. Gygrynuk, Tpr. Argo and Cpl. Csapo's reports. Therefore, Sgt. Houdek also falsified the same said reports.

26. Based on information and belief, Sgt. Houdek was not subjected to any disciplinary action.

27. Sgt. Mullet is the head of Troop 3 Criminal Division and he was instructed by Capt. Hawkins to conduct a final report on the October 26 incident. Although Sgt. Mullet was aware that Cpl. Maher was the suspect in the incident, he failed to identify him on his report.

28. Based upon information and belief, Sgt. Mullet was not disciplined for this false report.

29. Capt. Hawkins and Major Hughes both were aware that Cpl. Maher was the main suspect in the incident report and also advised the responding troopers through the "chain of command" not to identify Cpl. Maher on any of the reporting documentation.

30. Based on information and belief, both Capt. Hawkins and Major Hughes pled guilty to dereliction of duty, but only received three-day suspensions.

31. Sgt. Mullet, Tpr. Argo, Cpl. Csapo and Cpl. Gygrynuk falsified incident reports concerning the October 26 incident. However, not one of these officers was disciplined for falsifying their reports.

32. Thereafter, Plaintiff appealed the Trial Board's decision to Secretary David Mitchell. In a May 2005 conference call with Secretary Mitchell, Secretary Mitchell admitted to Plaintiff and her counsel that the punishment was too harsh and that he was ordering Plaintiff back to work. He also stated that he looked forward to Plaintiff having a long career with the Delaware State Police and that this incident would not hamper Plaintiff's career anymore.

33. A "Decision on Review of Disciplinary Action" was drafted by Secretary Mitchell's office which stated that in part, "I am remanding this matter to the superintendent to impose the penalty of loss of rank for a one-year period which shall begin on January 31, 2005. After a one year time period, Dempsey shall be returned to her previous rank."

34. Finally, on August 15, 2005, Plaintiff met with Capt. Yeomans, Capt. Winstead and Lt. Hudson about her return to the Division. Plaintiff questioned why she was being reassigned to Troop 4 rather than being allowed to return to Troop 7. Their response was that they would pass the questions onto Col. Macleish and he would get back to her. Plaintiff also asked why her loss of rank date was changed to commence on July 20,

2005; rather than commencing on January 31 2005, the original date ordered by Secretary Mitchell and the date upon which Plaintiff was suspended without pay.

35. On or about August 25, 2005, Plaintiff received a letter from Col. Macleish which stated that he was exercising his authority to change Plaintiff's loss of rank date. He also indicated in the letter that Plaintiff's transfer to Troop 4 was a "command decision".

36. On August 29, 2005, Plaintiff returned to work at Troop 4.

37. Plaintiff filed a charge of discrimination with both the DDOL and the EEOC on April 6, 2005. A copy of Plaintiff's Charge of Discrimination is attached as Exhibit "A".

38. The EEOC issued a Right to Sue Letter to Plaintiff on May 4, 2006. A copy of this Right to Sue Letter, received first by the undersigned attorney on May 4, 2006, is attached hereto as Exhibit "B".

**FIRST CAUSE OF ACTION**
**(Gender Discrimination)**

39. Plaintiff re-alleges and incorporates by reference herein paragraphs 1-38.

40. This cause of action arises under Title VII, 42 U.S.C. § 2000e(2)(a), as amended by the Civil Rights Act of 1991.

41. Defendant intentionally and maliciously discriminated against Plaintiff on the basis of her gender (female) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e(2)(a) when it:

(a) treated Plaintiff differently from similarly-situated males by disciplining Plaintiff more harshly than similarly situated male comparators;

(b) treated Plaintiff differently from similarly-situated males by terminating Plaintiff's employment;

(c) treated Plaintiff differently from similarly-situated males by changing her loss of rank date and transferring her to a different Troop after Plaintiff was reinstated;

(d) subjecting Plaintiff to public humiliation by treating Plaintiff more harshly than her similarly-situated male comparators and terminating Plaintiff's employment;

42. As a result of Defendant's unlawful gender discrimination, Plaintiff lost considerable pay; past, present and future and has also suffered humiliation, mental anguish and emotional pain.

43. Defendant's discrimination was willful, wanton and malicious. As a result, Plaintiff is entitled to an award of compensatory and punitive damages.

44. The above-stated damages were not the result of any act or omission on the part of the Plaintiff.

## SECOND CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing)

45. Plaintiff re-alleges and incorporates by reference herein paragraphs 1-44.

46. The actions of Defendant constitute a violation of the Covenant of Good Faith and Fair Dealing implicit in every employment agreement.

47. Defendant breached the Covenant of Good Faith and Fair Dealing to Plaintiff by discriminating against her based upon her race.

48. Defendant's discrimination was willful, wanton, and malicious. As a result, Plaintiff is entitled to an award of compensatory and punitive damages.

49. The above-stated damages were not the result of any act or omission on the part of the Plaintiff.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against the Defendant, State of Delaware, Department of Public Safety, and in her favor for damages suffered by Plaintiff as a result of Defendant's actions, including, but not limited to, back pay, front pay, benefits (both retroactively and prospectively), compensatory damages, punitive damages, attorney's fees, the cost of this litigation, pre- and post-judgment interest and such other further relief as this Honorable Court deems just and proper.

MARGOLIS EDELSTEIN

_____
Jeffrey K. Martin, Esquire (#2407)
Lori A. Brewington, Esquire (#4522)
1509 Gilpin Avenue
Wilmington, Delaware 19806
(302) 777-4680
(302) 777-4682 facsimile
Attorney for Plaintiff Christine Dempsey

Dated: July 27, 2006

# EXHIBIT A

Case 1:06-cv-00456-SLR    Document 1    Filed 07/27/2006    Page 10 of 13

# CHARGE OF DISCRIMINATION

*CP Copy*

This form is affected by the Privacy Act of 1974

**Delaware Department of Labor**

| ENTER CHARGE NUMBER |
|---|
| ☐ FEPA |
| ☐ EEOC |
| and EEOC (if applicable) |

| NAME (Indicate Mr., Mrs., Ms) | HOME TELEPHONE NO. (Include Area Code) |
|---|---|
| Ms. Elizabeth C. Dempsey | (302) 632-8559 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 12 Seachase Drive | Rehoboth Beach, DE 19971 | Sussex |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one, list below.)

| NAME | NO. OF EMPLOYEES OR MEMBERS | TELEPHONE NUMBER (Incl. Area Code) |
|---|---|---|
| State of DE./Dept. of Homeland Security/DE. State Police | 500+ | (302) 739-5900 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| P.O. Box 430 | Dover, DE 19903 |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| | |

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN  ☐ AGE

☐ RETALIATION  ☐ DISABILITY  ☐ OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST  4/2004
LATEST    04/6/2005
☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional space is needed, attached extra sheet(s):

Jurisdiction: Charging Party was employed by Respondent as a State Trooper in its Lewes, Delaware location-Troop 7

Charging Party's protected class: Female

Adverse employment action: Suspension

Brief statement of allegations: Charging Party was friends with another State Trooper, Brian Maher (male). During the relationship an altercation between the two occurred on October 26, 2003 and other State Troopers were called to Charging Party's residence. Charging Party was told by a superior officer, Capt. Robert Hawkins (male), not to disclose any information involving the incident. An internal and criminal investigation of the incident was conducted in April 2004. Charging Party was charged with filing a false complaint. The three male officers who responded to the scene and filed false complaints were not investigated or charged. The officers involved were Alex Argo, Mark Csapo and Walter Gyrgrunek. As a result of a Trial Board Hearing held on December 1, 2004 and January 13, 2005, Charging Party was suspended without pay pending termination on January 31, 2005.

Respondent's explanation: Charging Party filed a false complaint.

Applicable law(s): Title VII of the Civil Rights Act of 1964, as amended, and state of Delaware's Discrimination in Employment Act, as amended.

Comparator(s) or other specific reason(s) for alleging discrimination: Brian Maher received a loss of rank and suspended but allowed to use vacation. He was never threatened to be terminated even though criminal charges were accessed against him for the October 2003 incident. Respondent violated several policies while conducting it's investigation and handling the matter. Charging Party was questioned about her sexual relationship with Mr. Maher which was not relevant to the matter at-hand.

Additional information and verification of these facts are provided by the attached Affidavit.

☒ I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

SIGNATURE OF COMPLAINANT

*[signature]* 4/6/05

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

DDOL FORM B-05
REV 11/04

PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE AND MUST NOT BE USED

# EXHIBIT B

EEOC Form 161 (3/98)    U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Elizabeth C. Dempsey<br>12 Seachase Drive<br>Rehoboth Beach, DE 19971 | From: | Philadelphia District Office - 530<br>21 South 5th Street<br>Suite 400<br>Philadelphia, PA 19106 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 17C-2005-00303 | Charles Brown, III,<br>State & Local Coordinator | (215) 440-2842 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this Notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*[signature]* Marie M. Tomasso     May 4, 2006

Enclosure(s)     Marie M. Tomasso, District Director     *(Date Mailed)*

cc: STATE OF DE/DEPT. OF HOMELAND SECURity/De State Police
P.O. Box 430
Dover, DE 19903

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS
ELIZABETH C. DEMPSEY

**(b)** County of Residence of First Listed Plaintiff   SUSSEX, DE
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number) MARGOLIS EDELSTEIN
LORI A BREWINGTON    (302) 777-4680
1509 GILPIN AVE, WILMINGTON DE 19806

### DEFENDANTS
STATE OF DELAWARE, DEPARTMENT OF PUBLIC SAFETY

County of Residence of First Listed Defendant   KENT, DE
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability |  | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability |  |  | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise |  |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☒ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other |  |  | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights |  |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition |  |  |  |

### V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. § 2000e et seq

Brief description of cause:
EMPLOYMENT DISCRIMINATION BASED ON GENDER

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

### VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE _____    SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. __0 6 - 4 5 6__

## ACKNOWLEDGMENT OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A UNITED STATES MAGISTRATE JUDGE TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ____1____ COPIES OF AO FORM 85.

__JUL 2 7 2006__  _____[signature]_____
(Date forms issued)  (Signature of Party or their Representative)

__Robert Testa__
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action