**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ELIZABETH C. DEMPSEY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | C. A. No. 06-456 SLR |
| STATE OF DELAWARE, | ) | |
| DEPARTMENT OF PUBLIC SAFETY, | ) | |
| | ) | |
| **Defendant.** | ) | |

**ANSWER OF DEFENDANT, STATE OF DELAWARE**
**DEPARTMENT OF PUBLIC SAFETY**

COMES NOW, Defendant, State of Delaware, Department of Public Safety, and answers plaintiff's complaint as follows:  Unless expressly admitted or qualified, all of the allegations in the Complaint are generally denied.

1.    Upon information and belief, admitted.

2.    Denied as alleged.  Plaintiff, Elizabeth "Christine" Dempsey, is employed by the Division of State Police, which is a State agency within the Department of Safety and Homeland Security (DSHS).  DSHS is a department within the executive branch of the State of Delaware government, headed by Secretary David B. Mitchell.  The balance of the averment states a legal conclusion to which no response is deemed necessary.  Should an answer be deemed necessary, the balance of the averment is denied.

3.    This averment states legal conclusions to which no response is deemed necessary.  State Defendant reserves all defenses, including jurisdictional defenses, which may be available.

4.      Admitted that Plaintiff, Elizabeth C. Dempsey, graduated from the Delaware State Police Academy in or around December 1999 and was assigned to Troop 5 (12/27/99 – 2/6/00), Troop 7 (2/7/00 – 3/5/00) and Troop 5 (3/6/00 – 3/19/00) for Field Training. Plaintiff was then promoted to Trooper on March 20, 2000 and assigned to Troop 3.

5.      Admitted, upon information and belief, that on or about the night of October 25, 2003 (and/or the early morning hours of October 26th), Plaintiff was at her home during off duty hours with Kevin Keller, a social companion. Upon information and belief, while Keller was at the residence, Plaintiff placed a cell phone call to Brian Maher, with whom she was involved in a romantic relationship, which call precipitated Maher driving to Plaintiff's residence. The balance of this averment is denied as alleged.

6.      Denied as alleged. Admitted that Plaintiff placed a "911" call to the Kent County Communications Center ("Kentcom") stating that an unidentified person was breaking into her residence; Plaintiff failed to disclose the identity of the "suspect," which she knew, at the time she placed the call, to be Brian Maher. Plaintiff identified herself as a Delaware State Trooper to the 911 operator. Upon information and belief, Plaintiff was advised that officers were en route. Shortly thereafter, plaintiff made a second call to 911/Kentcom stating that officers did not need to report and again explicitly stating that she did not know who the alleged intruder was.

7.      Admitted that three Delaware State Troopers (Trooper Alexander Argo, Cpl. Mark Csapo and Cpl./1 Walter Gygrynuk) traveling separately, responded within minutes on an emergency basis to Plaintiff's residence and attempted to take a report from Plaintiff. Plaintiff was uncooperative, and maintained that she did not know who had tried to break in to her home and that she did not want to pursue the matter.

8.      Admitted that while driving home from plaintiff's residence, Cpl./3 Brian Maher called Captain Robert Hawkins, the troop commander for the area in which the incident had occurred, to report what had happened.  Captain Hawkins took the information Cpl./3 Maher relayed and advised he would get back to him.  The balance of the averment is denied as alleged.

9.      Upon information and belief, admitted that the three responding troopers met with their Sergeant, Michael Houdek, at Troop 3 after they concluded their investigation at plaintiff's residence.  The balance of the averment is denied as alleged.

10.     Upon information and belief, Captain Hawkins contacted plaintiff by telephone on Sunday, October 26, 2006.  The balance of the averment is denied.  Captain Hawkins asked plaintiff what she wanted done, including whether she wanted Brian Maher arrested.  Plaintiff said that she did not want anything done.

11.      Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of this averment.  Admitted that both criminal and internal affairs investigations were undertaken sometime in the spring of 2004.

12.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of this averment.  Upon information and belief, admitted that plaintiff was informed that both criminal and internal affairs investigations had been undertaken sometime in the spring of 2004.

13.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of this averment.  Upon information and belief, admitted that plaintiff was informed that both criminal and internal affairs investigations had been undertaken

sometime in the spring of 2004, and that plaintiff was interviewed in connection with the same.

   14.  Admitted that Cpl./3 Maher was arrested and charged with three misdemeanor counts on May 28, 2004. He was released on unsecured bond and was suspended from employment with the Delaware State Police. The balance of the averment is denied.

   15.  Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of this averment.

   16.  Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of this averment.

   17.  Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of this averment.

   18.  Denied as alleged. Admitted that Cpl./3 Brian Maher was charged Divisionally with one count each of violation of DSP Rule and Regulation (R&R) #4, "conduct unbecoming," and R&R #14, notification of domestic incident. Both allegations were substantiated following a Superintendent's hearing and disciplinary action was imposed as follows: Cpl./3 Maher was reduced to the rank of Corporal (a three-rank demotion)[1] and placed on probation for one year; he was also suspended for 15 days (including 5 days without the option to forfeit vacation). By way of further response, there is no distinction within DSP R&R #4 for "criminal" conduct unbecoming an officer and other conduct unbecoming an officer. In addition, there are no prohibitions from participation in special units by troopers while on disciplinary probation.

---

[1] There are 4 ranks of "Corporal" in the Delaware State Police. From lowest to highest rank: Corporal; Corporal Grade 1 (Cpl/1); Senior Corporal (Cpl/2) and Master Corporal (Cpl/3).

19.    Denied as alleged. Admitted that Plaintiff, Cpl. Elizabeth Dempsey, was charged Divisionally with violations of DSP Rule and Regulation (R&R) #15, (false statement/withholding material information), and R&R #14, notification of domestic incident, in connection with her actions in October 2003. The text of the Rules speaks for itself.

20.    Admitted that plaintiff exercised her right to have a hearing in front of a Divisional Trial Board, and per DSP procedure, was given a list of prospective board members of various ranks, which list included women and minority troopers, and was given the opportunity to strike several persons from that list. The final trial board consisted of Major Papili; Captain Homiak and Cpl. Larry Welch. The two-day hearing, at which plaintiff was represented by counsel, was held on December 1, 2004 and January 13, 2005. The balance of the averment is denied as alleged.

21.    Denied. Plaintiff was provided with all requested investigative information to which she was entitled under the Law Enforcement Officer's Bill of Rights, 11 Del. C. Ch. 92. The trial board made a finding to this effect in its final decision following plaintiff's hearing. Relevant witnesses to plaintiff's alleged misconduct were selected for presentation to the trial board by the prosecuting Deputy Attorney General, not by Defendant. By way of further response, Plaintiff also had the right to request that any DSP troopers appear as witnesses at the hearing.

22.    Denied as alleged. The trial board, advised by counsel, issued a formal written decision, with findings of fact and conclusions of law, on or about January 25, 2005, in which it concluded that plaintiff violated R&R 15. The recommended penalty, for reasons outlined in the decision, was that plaintiff "be suspended with pay with intent to terminate

pending review by the Acting Superintendent." On January 31, 2005, Acting Superintendent Thomas F. MacLeish concurred with the findings and recommended penalty of the trial board. Plaintiff, Cpl. Dempsey, was ordered suspended without pay pending review by the Secretary of the Department of Safety and Homeland Security. Plaintiff was never actually terminated from employment with DSP.

23.    Denied as alleged.

24.    Denied. By way of further answer, investigations into the conduct of Trooper Argo, Cpl. Csapo and Cpl./1 Walter Gygrynuk were conducted by DSP Internal Affairs and no violations were found. Accordingly, there was no discipline imposed. Specifically denied that there was any "falsification" of report(s).

25.    Admitted that Sgt. Houdek was the superior officer to, and reviewed reports (including reports pertaining to the Dempsey/Maher incident) prepared by subordinate officers Trooper Alexander Argo, Cpl. Mark Csapo and Cpl./1 Walter Gygrynuk. The balance of the averment is denied. Specifically denied that there was any "falsification" of report(s). By way of further answer, an investigation into the conduct of Sgt. Houdek was conducted by DSP Internal Affairs and no violations were found.

26.    Admitted. See response to averment #25 above.

27.    Denied as alleged. Sgt. Charles Mullett was the head of criminal investigations at Troop 3 and prepared a supplemental report shortly after the October 26, 2003 incident. This report stated, *inter alia*, that plaintiff desired no further action in the case, and the incident was classified as "unfounded."

28.    Denied that there was any "falsification" of report(s).  By way of further answer, an investigation into the conduct of Sgt. Mullet was conducted by DSP Internal Affairs and no violations were found.  Accordingly, there was no discipline imposed.

29.    Denied.  By way of further answer, plaintiff herself requested of Captain Hawkins that no action be taken with regard to the incident reports she caused to be created as a result of the events of October 25-26, 2003, even though Captain Hawkins asked her if she wanted Cpl. Maher arrested.  See also response to averment #8.

30.    Denied.  Captain Hawkins and Major Hughes each entered into a summary discipline agreement to a violation of Job Performance Standard #12, "poor judgment" (one count each), in connection with the incident.  Major Hughes' disciplinary penalty was a two day suspension, and Captain Hawkins' disciplinary penalty was a three day suspension.

31.    Denied that any "falsification" of reports occurred.  By way of further answer, the conduct of Trooper Argo, Cpl. Csapo, Cpl./1 Walter Gygrynuk and Sgt. Mullet was investigated by Internal Affairs and no violations were found.  Accordingly, no discipline was imposed on these troopers.

32.    Admitted that plaintiff appealed the trial board's decision to the Secretary and that Secretary David Mitchell held a hearing on Plaintiff's appeal, and issued a written decision on or about July 1, 2005, in which he remanded the case to the Superintendent to issue a modified penalty for plaintiff's violation.  Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the balance of the averment.

33.    Admitted.

34.    Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of this averment.

35.    Denied as alleged.  Admitted that Colonel MacLeish sent plaintiff a letter regarding her disciplinary penalties on or about August 19, 2005.  The letter speaks for itself.

36.    Admitted that plaintiff returned to work at Troop 4 following her suspension. Upon information and belief, her scheduled return to work date was July 20, 2005; her actual return to work date was August 15, 2005.

37.    Admitted that plaintiff filed a charge of discrimination with the Delaware Department of Labor and the EEOC, in which a "no cause" finding was issued and the charge was dismissed.

38.    Upon information and belief, admitted.

39.    Defendant restates and incorporates herein by reference the responses set forth in paragraphs 1 through 38 above.

40.    This averment states legal conclusions to which no response is deemed necessary.  State Defendant reserves all defenses, including jurisdictional defenses, which may be available.

41.    Denied as to all parts and sub-parts.

42.    Denied.

43.    Denied.  By way of further response, punitive damages are not available as a remedy against a government agency under a Title VII claim.  See affirmative defenses.

44.    Denied.  Damages, if any, were the direct and proximate result of plaintiff's own conduct.

45.    Defendant restates and incorporates herein by reference the responses set forth in paragraphs 1 through 44 above.

46.    Denied.

47.     Denied.[2]

48.     Denied.

49.     Denied.  Damages, if any, were the direct and proximate result of plaintiff's own conduct.

## DEFENSES/AFFIRMATIVE DEFENSES

50.     The State and its agencies are immune from liability to plaintiff under the doctrine of sovereign immunity.

51.     The State and its agencies are immune from liability to plaintiff under the Eleventh Amendment of the United States Constitution.

52.     Plaintiff's claims, in whole or in part, are barred by the appropriate statute of limitation, repose, or other statutorily required administrative time requirement.

53.     The complaint should be dismissed, in whole or in part, for failure to exhaust administrative remedies.

54.     Plaintiff unreasonably failed to take advantage of any preventive, corrective or remedial opportunities provided by the employer, and unreasonably failed to avoid harm otherwise.

55.     This Court is without original subject matter jurisdiction over Count 2 of plaintiff's complaint, pursuant to Article III, Section 2 of the United States Constitution, and 28 U.S.C. §§1331, 1332.

56.     Count 2 of plaintiff's complaint, even if properly before the Court, would be barred by the exclusivity provision of Delaware's Workers' Compensation Law, 19 Del. C. §2304.

---

[2] Defendant assumes that the reference to "race" discrimination in this averment is an error.  Specifically denied that plaintiff has ever complained of "race" discrimination in this matter, or that she could maintain such a claim.

57.     The State and its agencies are immune from liability to the plaintiff for claims, if any, sounding in State law, pursuant to the Delaware State Tort Claims Act.  10 Del.C. §4001 *et. seq*.

58.     All decisions made and actions taken by Defendant with regard to the alleged events were not based upon or motivated by gender.

59.     To the extent Plaintiff's claims sound in negligence, Plaintiffs cannot state a cause of action under Title VII.

60.     Plaintiff cannot impute liability (if any) for actions of other State agencies or their officials to Defendant.

61.     To the extent Defendant exercises prosecutorial, or quasi-prosecutorial functions, Defendant is immune from liability.

62.     Plaintiff fails to state a claim for punitive damages, as such damages are not available as a remedy against a government agency under a Title VII claim.  42 U.S.C. § 1981a(b)(1).

63.     It is specifically denied that plaintiff is entitled to any damages, including compensatory damages, punitive damages and/or attorneys' fees.

64.     It is specifically denied that plaintiff is entitled to any relief.

65.     Plaintiff's injuries and damages, if any, were the direct and proximate result of plaintiff's own conduct.

66.     Plaintiff failed to mitigate any alleged damages.

67.     Plaintiff otherwise fails to state a claim upon which relief may be granted.

**WHEREFORE**, Defendant demands that judgment be entered in its favor as to all claims, and that costs and attorney fees be awarded to the Defendant.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

  /s/ Stephani J. Ballard
STEPHANI J. BALLARD (ID # 3481)
Deputy Attorney General
State of Delaware
Department of Justice
Carvel State Office Building
820 North French Street
Wilmington, DE 19801
(302) 577-8400
Attorney for Defendant

DATED: September 15, 2006

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ELIZABETH C. DEMPSEY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | **C. A. No. 06-456 SLR** |
| STATE OF DELAWARE, | ) | |
| DEPARTMENT OF PUBLIC SAFETY, | ) | |
| | ) | |
| **Defendant.** | ) | |

**CERTIFICATE OF MAILING AND/OR DELIVERY**

The undersigned certifies that on <u>September 15, 2006</u>, she caused the attached, *Answer of*

*Defendant, State of Delaware Department of Public Safety,* to be electronically filed with the

Clerk of Court using CM/ECF which will send notification of such filing to the following:

Jeffrey K. Martin, Esquire
Margolis Edelstein
1509 Gilpin Avenue
Wilmington, DE 19806

                    STATE OF DELAWARE
                    DEPARTMENT OF JUSTICE


                    /s/ Stephani J. Ballard
                    Stephani J. Ballard, I.D. #3481
                    Deputy Attorney General
                    Carvel State Office Building
                    820 N. French Street, 6th Floor
                    Wilmington, DE  19801
                    (302)577-8400
                    Attorney for Defendant