IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELIZABETH C. DEMPSEY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>STATE OF DELAWARE, )<br>DEPARTMENT OF PUBLIC SAFETY, )<br>)<br>Defendant. ) | Civil Action No.: 06-456 SLR |

**DEFENDANT'S SUMMARY JUDGMENT STATEMENT
PURSUANT TO COURT'S ORDER OF FEBRUARY 13, 2008**

On January 29, 2008, the above-captioned Defendant filed a motion and Opening Brief for Summary Judgment in its favor, and against the Plaintiff in this matter, pursuant to Federal Rule of Civil Procedure 56(c). (D.I.s 38 and 39). On February 13, 2008, this Court issued an Order requesting a short and concise statement summarizing (a) the material facts as to which the moving party (Defendant) contends there is no genuine issue to be tried and (b) the legal issues upon which judgment is sought. This Statement is Defendant's submission in compliance with that Order.

**(A) Material Facts As To Which The Moving Party (Defendant) Contends There Is No Genuine Issue To Be Tried.**

1)   Plaintiff, Elizabeth C. ("Christy") Dempsey is a female Delaware State Trooper, who is currently, and was on October 26, 2003, employed by Delaware State Police (DSP) with the rank of Corporal.

2)   Brian Maher was on October 26, 2003 employed by Delaware State Police (DSP) with the rank of Master Corporal. Maher has since retired. As of October 26, 2003, Maher and Dempsey were involved in a consensual dating relationship. (A-69)[1].

---

[1] "A-__" references are to pages included in Defendant's Appendix in support of their previously filed Motion for

3) In the early morning hours of October 26, 2003, Plaintiff, while off duty, placed a call to the Kent County Emergency Dispatch Center (KENTCOM) to report a burglary in progress at her home in Frederica, Delaware. (A-385-88).

4) At the time of the call and the alleged break-in Plaintiff had a friend, Kevin Keller, with her in her home. (A-181; 409-10; 425-26).

5) The person who was banging on Plaintiff's door and broke a window to gain access to the home was Brian Maher.

6) Maher fled the scene when he overheard Plaintiff calling KENTCOM.

7) Plaintiff told KENTCOM, during two separate recorded calls, that she did not know the identity of the intruder. (A-385, 387).

8) Plaintiff admits that she, in fact, knew at the time she placed her emergency calls that the intruder was Brian Maher. (A-561).

9) Three Delaware State Troopers, traveling separately, raced to Dempsey's house upon receiving a 1:00 a.m. "burglary in progress" call for Plaintiff, a fellow trooper. (*See* A-453).

10) During the Troopers' investigation at the scene, Plaintiff withheld material information about the "burglary" she had reported. (A-24, 248-54).

11) During the Troopers' investigation at the scene, Plaintiff gave a series of false statements to the Troopers. (A-24, 248-54).

12) Plaintiff told Kevin Keller not to come out of the bedroom when police arrived, even though he had been a witness to the alleged burglary. (A-432-34).

13) Cpl. Brian Maher, as he was driving away from Plaintiff's residence, placed a phone call to Captain Robert Hawkins, the troop commander for the area in which the incident had taken

---

Summary Judgment. (D.I. 40).

place, and told him what he had done. (A-71).

14) Captain Hawkins advised the Troop 3 Sergeant, Sergeant Michael Houdek, that Maher was involved with the Dempsey incident. Hawkins told Houdek to have the responding troopers write up a report of the incident as Dempsey had reported it, for Hawkins' review the next day. (A-7, 12). Houdek did so.

15) Hawkins advised Houdek that the Criminal Investigations (CI) unit would follow up on the incident. (A-8).

16) That same day or the next day, Captain Hawkins called Plaintiff to discuss what had happened and find out what she wanted done with the case. (A-9-10). Dempsey told Hawkins she did not want Maher arrested and did not want anything else done. (A-10, 24).

17) The next day, Monday October 27, 2003, Captain Hawkins met with and assigned the case to Troop 3 Criminal Investigations for follow up. (A-263). Sgt. Charles Mullett of CI changed the disposition of the report to "unfounded," noting that the victim (Dempsey) "desires no further action in this case . . . Victim feels that no crime was committed." (A-8, 18-19; A-253).

18) Both Captain Hawkins and his superior, Major Hughes, to whom he reported the incident, admitted in hindsight that they did not follow a DSP policy on domestic incidents involving troopers, in the disposition of the October 26, 2003 incident. (A-11; A-37).

19) The testimony is undisputed that the incident was handled the way it was at the express request of Plaintiff Dempsey herself--that nothing further be done about the incident.

20) Nothing further took place, and no person requested any action in connection with the incident, until April 2004.

21) In April 2004, another DSP Captain (Dixon) learned of the incident and advised Major Randall Hughes (Captain Hawkins' superior) about this incident involving two troopers. (A-

33-35).

22) Major Hughes referred the matter to the Lt. Colonel and they agreed that criminal and internal affairs (IA) investigations should be commenced into the October 26, 2003 incident. (A-35, 43).

23) As a result of the criminal investigation, Brian Maher pled to a misdemeanor charge of Criminal Trespass, and successfully completed a court-issued Probation before Judgment. (A-324-25).

24) DSP Internal Affairs investigated the conduct of Plaintiff Cpl. Dempsey, Cpl. Maher, the responding troopers, Sgt. Houdek, Captain Hawkins, Sgt. Mullett, and Major Hughes, and interviewed all of these persons, and other witnesses.

25) As a result of the IA investigation, Plaintiff was charged with violations of DSP Rule and Regulation ("R&R") #15 (making a false statement or false written or verbal report) and Job Performance Standard ("JPS") #14 (domestic incident). (A-331-32; A-209, 212).

26) Plaintiff, Corporal Dempsey, invoked her right to a three-member Divisional Trial Board which conducted an evidentiary hearing on the charges against her, at which Plaintiff was represented by counsel.

27) The charge of violation of JPS #14 (failure to report a domestic incident) was found to be unsubstantiated, but the trial board substantiated Dempsey's violations of R&R #15 (making false statements), finding in its written opinion that "Dempsey made a series of false statements when she called 911 and to the Troopers investigating her criminal complaint." (A-367-68).

28) The Trial Board unanimously recommended that Dempsey be suspended with pay with intent to terminate, finding in its written opinion that the trustworthiness and credibility of an officer is a critical component of their ability to perform the duties of law enforcement. (A-370).

29) Plaintiff Dempsey exercised her right of appeal to the Secretary of Public Safety, who held a hearing and found that there was substantial evidence to support the Trial Board's finding that Dempsey had violated DSP R&R #15, but found that the proposed penalty of termination was disproportionate to the severity of the infraction under the circumstances. (A-377-80). The Secretary ordered reduced discipline of reduction in rank; 15 days suspension without pay and one year's probation. Id.

30) Plaintiff was never actually terminated from her employment with DSP, and was restored to her original rank after serving her disciplinary demotion.

31) Plaintiff has been made whole as to all back wages owed during the pendency of her appeal/suspension without pay, and calculation of wage differential during her adjusted demotion dates. (A-240-42).

32) Plaintiff was reassigned to Troop 4 from Troop 7 when she returned to work following her successful appeal to the Secretary.

33) Although Plaintiff complains of this action, she admits that "DSP Troopers are not guaranteed to be assigned to a specifically requested troop or a specifically requested rotation/shift." (A-183). The DSP Divisional Manual provides that "all members of the Division are subject to reassignment, at any time . . . to any location in the State of Delaware." (A-231).

34) As a result of the IA investigation, Cpl. Brian Maher was charged with violations of DSP Rule and Regulation ("R&R") #4 (conduct unbecoming an officer) and Job Performance Standard ("JPS") #14 (domestic incident). (A-312-13; A-207, 212).

35) Cpl. Maher opted for a Superintendent's Hearing instead of a trial board, at which he pled no contest. As a result of the hearing, the Superintendent imposed discipline of a three-rank demotion; 15 days suspension without pay and one year's probation. (A-326).

36) As a result of the IA investigation, Captain Robert Hawkins was charged with violation of JPS #12 (neglect of duty). (A-309). Internal Affairs recommended, and then-Lt. Colonel Thomas MacLeish approved, the imposition of Summary Discipline[2] against Hawkins, consisting of 24 hours suspension. (A-310-11).

37) As a result of the IA investigation, Major R.L. Hughes was charged with violation of JPS #12 (neglect of duty). (A-309). Internal Affairs recommended, and Lt. Colonel MacLeish approved, the imposition of Summary Discipline against Hughes consisting of 16 hours suspension. (A-302-03).

38) On or about April 6, 2005, Plaintiff filed a Charge of [gender] Discrimination with the EEOC/Delaware Department of Labor. The DDOL, on February 28, 2006, issued a "no cause determination" finding no reasonable cause to believe that DSP engaged in gender discrimination against Cpl. Dempsey. (A-384).

**(B) The Legal Issues Upon Which Summary Judgment Is Sought.**

39) Plaintiff cannot establish a *prima facie* case of Title VII gender discrimination under the three-step, burden-shifting inquiry laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973).

40) Defendant admits that Plaintiff, a female, is within a Title VII protected class.

41) There is no evidence in the record to show that the Delaware State Police treated any similarly situated male Troopers more favorably, or otherwise to support an inference that the State took disciplinary or other adverse action against Dempsey because of her gender.

42) There is no evidence in the record of, any similarly situated male comparators who were more favorably treated/less harshly disciplined than Plaintiff for similar misconduct.

---

2 A Trooper's acceptance of summary discipline is the equivalent of a guilty plea to the charge. Summary discipline

43) The discipline imposed on other male troopers involved in the October 26, 2003 incident/reporting is not a valid basis for comparison, as the charges against these troopers are of an entirely different nature than the charges against Plaintiff Dempsey. These troopers are not similarly situated to Plaintiff.

44) The proposed discipline of termination was recommended by a three-member Trial Board, not involved in the underlying incident, at a hearing in which Dempsey received full due process and other rights, pursuant to the Delaware Law Enforcement Officers' Bill of Rights (LEOBOR), 11 Del.C. Ch. 92.

45) Dempsey's discipline was reduced to demotion and suspension following her appeal to the Secretary.

46) Even if Plaintiff could establish a *prima facie* case, there is no question that the State had a legitimate, non-discriminatory reason to discipline Dempsey—a State Trooper--for making false statements to and withholding material information from the 911 Center and Troopers responding to an emergency call about a burglary at her home in the early morning hours.

47) The Trial Board cited, in support of their decision, a 1998 letter from former-Attorney General Jane Brady, addressing police officer credibility and the obligation to disclose information about an officer's lack of credibility as Brady material in criminal cases.

48) There is no evidence in the record which could support a conclusion that any action taken toward Dempsey by the State was a pretext for gender discrimination.

49) There is no evidence in the record of any gender-based animus on the part of any person involved in the events of this case.

50) Plaintiff has suffered no loss of back pay or other actual damages which are

---

is only available for charges of a less serious nature than those which would require a trial board. (A-230).

compensable under Title VII. Punitive damages are not available under Title VII against government employers.

51) Plaintiff's pendent state law claim against her State Employer is barred by the Eleventh Amendment. Pennhurst v. Halderman, 465 U.S. 89, 106 (1984) ("Pennhurst II").

52) Plaintiff's pendent state law claim against her State Employer is barred by the exclusivity provision of the Delaware Workers' Compensation Act. 11 Del.C. Ch. 92.

53) This Court should decline to exercise supplemental jurisdiction over a pendent state law claim to the extent Plaintiff's federal claim is dismissed.

WHEREFORE, for the foregoing reasons, and the reasons discussed in Defendant's Opening Brief in Support of its Motion for Summary Judgment (D.I. 39), there are no genuine issues of material fact and no basis upon which a reasonable fact-finder could find in Plaintiff's favor on her Title VII claim for gender discrimination or her state law claim.

**DEPARTMENT OF JUSTICE**
**STATE OF DELAWARE**

  /s/Stephani J. Ballard
STEPHANI J. BALLARD (I.D. No. 3481)
Deputy Attorney General
Carvel State Office Building
820 North French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400

DATED: February 29, 2008        Attorney for State Defendant

### IN THE UNITED STATES DISTRICT COURT
### IN AND FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELIZABETH C. DEMPSEY, ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: 06-456 SLR |
| ) | |
| v. ) | |
| ) | |
| STATE OF DELAWARE, ) | |
| DEPARTMENT OF PUBLIC SAFETY, ) | |
| ) | |
| Defendant. ) | |

### CERTIFICATE OF MAILING AND/OR DELIVERY

The undersigned certifies that on February 29, 2008, she caused the attached, *Defendants' Summary Judgment Statement Pursuant to Court's Order of February 13, 2008*, to be electronically filed with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

Jeffrey K. Martin, Esquire
Martin & Wilson, P.A.
1508 Pennsylvania Avenue, Suite 1C
Wilmington, DE 19806

/s/ Stephani J. Ballard
Stephani J. Ballard, I.D. #3481
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302)577-8400
Attorney for Defendant